The last case for this morning is Plum v. Geico. Counsel for the appellant can make your appearance and proceed. May it please the Court. My name is Grace Bouchon. Ms. Mallory Shainer and I represent the appellant, Mr. Dionne Plump. I will discuss the first step of the McDonnell Douglas test, the prima facie case, and for time purposes, I'll focus on race discrimination. Ms. Shainer will address pretext. We'd like to reserve two minutes for rebuttal. This Court should hold that Mr. Plump established his prima facie case for two reasons. First, his position was not eliminated, and second, the timing and circumstances of his First, the continued existence of a job satisfies the discriminatory inference under this Court's precedent going back to Perry and Kendrick, but reaffirmed most recently in January in WalkingStick. Geico's contention that continued existence of a position cannot satisfy the prima facie case for termination situations is false, as this Court reestablished in WalkingStick. I may have missed it, but I don't recall seeing in the briefing, what does the acronym MOTE stand for, M-O-A-T? I don't know that off the top of my head. It's some form of, it's... I'll ask Geico, go ahead. In WalkingStick, the reason that plaintiff was fired was poor job performance and improper timekeeping. So just as in this case, even though the reason given was not elimination of the position, the fact the position's still eliminated is enough for the prima facie case. We got a 28-J filing, and one of the suggestions is that there's no evidence in the record that the position was not eliminated. Is there? There... Geico has never contested that the... Geico has never claimed that the position was eliminated, and as Monroe and Washington, which we cited in our brief, held, lack of contention that the position was eliminated is enough to assume that it continued to exist after the plaintiff was fired. And both of those cases cite a Tenth Circuit case, English v. Colorado Department of Correction, which says that if the given reason is anything other than workforce reduction, that is sufficient. That's because the purpose of the prima facie case, as the Supreme Court held in Berdeen... Hold on. Getting back to Judge McHugh's question, didn't the district court reference that the job remained open? Wasn't that in the opinion? I believe the best evidence in the record is that Geico said that the Kansas City office was frequently hiring. The district court did not look at whether the position remained open, but they rather looked at timing and circumstances. Okay. Okay. You answered my question. Under Berdeen, the purpose of the prima facie case is merely to eliminate the two most common legitimate reasons for terminating an employee, which are elimination of the position and lack of qualification. Here, Mr. Plump established his prima facie case because he was qualified and his position continued to exist. Geico argues that because he did not have a New York license, that he was not qualified for the position. How do you respond to that? Mr. Plump was qualified as the district court held for two reasons. First, because at the prima facie stage, qualification is a minimum inquiry and as WalkingStick says, the court should look to the basic skills necessary to perform the job. Second, as the appellant said in the previous case under EEOC versus Horizon, considering the employer's legitimate non-discriminatory reason at the prima facie stage would only unfairly collapse the first two steps of the McDonnell-Douglas test. Are you distinguishing here between whether or not the plaintiff was told that licensure in New York was a qualification or a different thing, and that is it's not listed in the qualifications that are necessary for the job? Um, both are the case here. We contend that he was not told and also it was not. You stipulated in 2A IV, Plump was told that having a New York insurance license was important to his role, but he did not obtain a New York insurance license while he was employed by GEICO. He stipulated to that, not you. That's the death knell to that issue, isn't it? No, Your Honor. Mr. Plump stipulated that he knew it was important to have, but not that he knew it was required. Well, he also didn't stipulate to whose responsibility it was to obtain it. Correct, Your Honor, which is one of the issues of fact that indicate this case should not have been resolved on summary judgment, and that goes to pretext, as my co-counsel will discuss. And as we're talking about stipulations, though, there was also a stipulation that GEICO considers it, meaning New York licensure, a required state license for the Moat Sales Department. He stipulated to that. So he acknowledged that GEICO believes, in GEICO's view, it's a requirement. So I think going off of where Judge Murphy was going, isn't there a distinction between what GEICO says is a requirement and what he is told? Correct. There is a distinction, and there's also no stipulation or clear evidence in the record about when it became a bona fide qualification. So your suggestion is that this issue isn't related. It's not determinative of whether or not a prime official case was stated, but it is pertinent to the analysis of the pretext issue. Exactly, Your Honor. And I would like to reserve the rest of my time for my co-counsel to discuss pretext. Thank you. May I please the court, Mallory Shainer, on behalf of Mr. Plump. I guess you know what questions we have on the stipulation. Of course. And pretext. Yes, Your Honor. Would you like to ask them, or pick up where my co-counsel left off? I would like to know why 2A III and 2A IV establish clearly no pretext. So with regard to those two factual stipulations, the parties' briefs make clear that this entire case is about the New York license requirement and whether or not Mr. Plump knew that it was a requirement for his job. The first pretrial stipulation speaks to, as Judge Holmes said, what GEICO considers and is also written in the present tense. There's no clear evidence in the record as to when this requirement went into effect. The best evidence we have is beginning in November of 2021, which is 17 months after Mr. Plump had been working at GEICO. And then the second stipulation that Plump was told that having a New York license was important to his role just speaks about what Mr. Plump knew, but important doesn't mean the same thing as required. Okay, but isn't that the very distinction that your co-counsel made? Is that that's a good argument as to prima facie case, but it's not so great when we're considering pretext. If he was fired because he didn't pass, he didn't have a New York license, didn't it just eliminate any pretext there was? That's why he was fired. And it's important to GEICO, it's GEICO's perspective. Sorry for interrupting. No, Your Honor. With regard to pretext in this circuit, pretext is not about unquestionably establishing under the McDonnell Douglas burden framework. It's not about Mr. Plump unquestionably establishing that the New York license was a true requirement that he was told about pretext, which is why these factual disputes are material. Pretext goes to whether the employee's evidence calling into question the employer's proffered legitimate non-discriminatory reason for termination could lead a fact finder to find these reasons unworthy of credence. So it's about introducing evidence that could call into question GEICO's reason and GEICO's litigation position is that Mr. Plump was terminated for his failure to obtain a New York license. And so here, and this circuit has held in a case Bryant v. Farmer's Insurance. Let me ask you this, perspective. Isn't perspective important in pretext? And that is the perspective is the perspective of the employer who is stating a reason for the termination. That's who's that's whose mind we look in, correct? For pretext, yes. We don't look into Mr. Plump's state of mind. We look into the employer's state of mind, GEICO. Did they tell did they tell the truth when they said he was fired because he didn't have a license in New York? Your Honor, there is no documentary evidence in the record about this New York license requirement as within Mr. Plump's job description. We're not skipping a requirement. We're saying important. It was important. So again, Mr. Plump's deposition testimony, there is a stipulation. Yes, the pretrial stipulation. But Mr. Plump's deposition testimony discusses the fact that all he was told is he needed enough licenses to remain serviceable, which was communicated to him as at least 12 out of the 50 states and at least two of five high volume states. And he had three from those high volume states, just not New York. And I also think what your honor is getting to is the idea of for pretext, looking at the facts as they appear to the person making the decision to terminate. But there is no evidence in the record to show when Miss Beaver is the one who made the decision to terminate. But there's no evidence in the record to indicate when Miss Beaver became aware of this New York license requirement. And if if she had become aware of this requirement at the same time that they were considering terminating Mr. Plum. OK, and let's assume that that's true. She became aware of that license requirement at the time that they were considering terminating Mr. Plum. Let's say I think it was November 2021. Let's say they did that and they decide, OK, well, we're going to dismiss you, Mr. Plum, for that reason. Going to what your colloquy with Judge Murphy. The question becomes, is that does Geico really believe that that's why they're dismissing him or not? And whether you can show whether there's admissible evidence that would raise the question for the fact finder, genuine dispute that that was a pretext for discrimination. If Geico really believed and has been consistent throughout this litigation, that we thought they fired him for not having what this New York licensure, which they required. Then what is the problem? And let me ask one sort of subset below. If the issue is he didn't know about it, there's this unknown requirement. Well, where do we have cases that say that is relevant to the pretext question? Your Honor, with regard to that question, the president in the circuit talks about subjective criteria. Other circuits have called it unmentioned job requirements. The circuit has just discussed subjective criteria. And why isn't there a difference between unmentioned, which is other circuits and our circuit is subjective? That's not a subjective requirement. Geico wants a New York licensure. Why is that a problem? Why don't they have a right as an employer to say that's what we want, even if it's belated? Since it's about summary judgment, it's about introducing a dispute of fact that a reasonable fact finder could find one way or the other. And so here, because there's no written objective documentation of the New York license requirement being communicated to Mr. Plump directly. Bingo. Communicated to him. It doesn't matter. The point is at the pretext stage, November 2021, they walk in the room. Let's assume that the person who's talking to him, I forgot what her name is. At that point, they look up on the bulletin board and they say, oh, wow, Geico has a New York licensure requirement. I didn't even know about it. I go into the room and I say, well, I'll tell you what, Mr. Plum, you don't have that in your fire. Well, or I'm going to begin firing you then. Where as a matter of law for pretext, where's the problem? If that person really believed that they were implementing Geico policy and firing that person because they didn't have a New York license. If Mr. Plum's only response is you never mentioned it to me. I acknowledge there are other circuits that may have talked about unmentioned criteria, but we haven't done that. So if the only response is you never mentioned it to me, why is that as a matter of law sufficient? As a matter of law, that's sufficient because, again, this is a summary judgment. And any inference, any factual dispute that could lead to an inference of discrimination. Where is the factual dispute? The point I'm making is you've acknowledged that somewhere along the line, Geico says in the present tense, we have this New York requirement. You also, if I heard you correctly, say that the most recent time it could have been is November 2021 when they're telling him that they have that requirement. Well, they tell them they have that requirement. The fact that it's not written down anywhere in the record. If the person talking to Mr. Plum believes they're implementing Geico policy, they say November 2021, we have a requirement. You're going to be fired. Where's the dispute of fact? May I briefly answer your question?  I know I'm out of time. Your Honor, so if the subjective criteria as an element, as a way to show pretext doesn't apply here, there's also shifting rationales here. Ms. Beaver, who was Mr. Plum's manager, also discussed in her deposition that she had already been considering terminating Mr. Plum for purported call avoidance. And when she found out that he was not actually avoiding calls, then she started to look for whether or not this New York license requirement applied. And at the end of the day, Geico discusses that it was Mr. Plum's failure. And that's an important distinction as well, because it was Geico's licensing team, which they conceded, that was unable to follow up. And so they missed the appeal deadline for Mr. Plum to appeal his New York license denial. This court should remand because summary judgment was inappropriate here. Thank you. Thank you, counsel. May it please the court. Jenna Brofsky appearing on behalf of Geico. What does MOTE mean? MOTE is an acronym that's not actually defined. And that's in the pretrial order as well, Your Honor. We looked it up. Well, but it's not defined by, there's nowhere in the record where it says what MOTE means. Correct. Correct. Go ahead, please. New York State denied Mr. Plum's application for a sales license, which meant that he could not service customers in New York. Yet he was required to do this as part of his job. And we know this because he stipulated first that his employer required not just him, but everybody in his department to have this specific license. Two, he was told at the time that his license was denied that he could not remain in his position. And three, he was told. What stipulation are you talking about as it relates to the New York requirement? If it is the stipulation that Geico has this requirement in the present tense, that's not him saying that I knew this requirement existed and that everybody in my department had the requirement. So what stipulation are you talking about? Your Honor, I'm referring to the stipulation three where it states New York is the second most frequent state MOTE sales receives calls from. So Geico considers it a required state license for the MOTE sales department. And then there's a stipulation 12 where he was told that he couldn't remain in his role without a New York license. And Mr. Plum was told this undisputedly in November 2021. He did not apply for FMLA until December 2021. There's nothing about these circumstances from which to infer racial animus or retaliatory animus. Let me ask you about shifting reasons for his termination. When he got the new supervisor, there was first an attempt to terminate him due to alleged call avoidance. Then there was, they wanted to fire him for call transfers and then the license issue and then job abandonment. All of these were discussed. Isn't that pretty good evidence of shifting reasons for terminating him that might support a pretext argument? Your Honor, there were no shifting rationales here and I'm happy to explain the context. As an initial matter, it is uncontroverted that Ms. Beaver was the decision maker here. Ms. Selleck was a supervisor who didn't have any authority. Second, Mr. Plum was- Well, but Ms. Selleck was communicating and giving them reasons for firing him. And when he tried to apply for the other position, he was denied the position in part because she said that he had a problem with call avoidance. And if you look at the record, there was one instance of call avoidance. I'd like to explain that Mr. Plum wasn't terminated for call avoidance. Mr. Plum did have- He was prevented from transferring to a different position because of call avoidance. Well, I want to be clear that Geico had no responsibility. This isn't a failure to accommodate situation. When Geico realized that he didn't have a license, that he had been denied his license on the merits, then it sought to see if there was another place for him, which certainly doesn't show any- Well, but we have a supervisor who basically sabotages his ability to transfer to another position by saying she has serious concerns about call avoidance. And when you look at the record, there is one instance of call avoidance. Doesn't that give you some evidence to suggest that perhaps he was a target of some animus? I don't believe it does. Again, Your Honor, that wasn't the decision maker. There is more evidence than one time of call avoidance. And at the end of the day, Your Honor, the requirement is undisputed that New York was a required license. Geico has articulated that. And again, from the vantage point of the employer, it was an honest belief that he didn't have this license, and it's undisputed. Whose responsibility, once a sales representative was hired and they took the licensing exam and they passed, who at Geico had the responsibility to obtain individual state licenses? And I think that there's a difference between obtaining the license and having a license denied. There's no dispute- Answer my question before you go off on another tangent. Apologies, Your Honor. There's no dispute that it was applied for in tandem between appellant and the licensing department. It was the licensing department, and there's evidence in the record where Mr. Plump's supervisors are instructing him not to be involved. Don't do this. Don't get off the phones. This should be handled by the licensing department. Don't be involved. And, in fact, in some of those emails, it actually tells the licensing department, they say, Dion should not be involved in this. And I believe the part of the record you're referring to was months and months after Mr. Plump did not respond to direct correspondence from New York State that was sent only to him regarding missing materials from his application. You're not answering my question. He was told not to be involved in obtaining these licenses and that the licensing department would handle it. There's not a situation where he was told not to be involved in his New York license. I believe there's evidence later on regarding a Louisiana license, but the denial of his license was something that he is responsible for because he received those letters from the state and he failed to respond to them. Geico has articulated a legitimate non-discriminatory reason for termination. An appellate hasn't met his high burden to show by a preponderance of the evidence. The termination for failure to have a license was somehow a cover-up for racial discrimination or for protected activity that had not yet occurred when he was told he needed the license. This court should affirm the district court's grant of summary judgment for Geico. I'd like to explain that there's no factual dispute here because those disputes are precluded by his stipulations at the district court level where he was represented by counsel. Are you finding the point that you're going to concede that this is a pretext case, not a prima facie case? Your Honor, we're not going to concede that, but we do understand that the court can decide. How do you deal with Kendrick and his progeny? That is, you have to show that the position was closed. Your Honor, the Tenth Circuit has allowed flexibility in the articulation of the test, but at the end of the day, the purpose is to show whether the adverse action occurred under circumstances giving rise to an inference of discrimination. The prima facie case requires qualification and the position remained open. And, Your Honor, I think that... Now, what part of that puzzle am I missing? Well, I think that test is one way to show based on the circumstances. I think when the Tenth Circuit has applied different iterations, it has expressly said it depends on the circumstances. Well, that's in Plotki, right? That is in Plotki. And in that case, the position was eliminated. So you couldn't use the test that Judge Murphy just articulated. And what we said was, you know what, there may be circumstances even where the position is eliminated that there are enough facts in the totality of the circumstances that they can meet the prima facie burden. But nowhere, and in fact, in WalkingStick-Dixon, we just made it very clear that if you can show those three things, protected class, you were terminated, and the position remains open, you've made a prima facie case. And I'd agree with that, that that was the test applied in WalkingStick, certainly. And in that case, she was replaced. And in our situation, there's just no facts as to what happened to the position. I thought you conceded that. I mean, on page 18 of the response brief, you conceded as much. I don't believe that was the intention of that sentence. That sentence was distinguishing, I think, between a reduction in force. There's nothing in the record. There's no evidence to show what happened to the position. Well, if counsel makes a representation that the position was not filled, then why isn't that sufficient? And that is certainly not the intention of any representation in the briefing. Should the court decide that it wants to decide this case and affirm on the second and third prongs, we certainly understand that, because at the end of the day, what this is about is deciding if, from the vantage point of the employer, there was an honest belief that an employee didn't have something required for his job, and it is stipulated that he had to have a New York license, and Ms. Beaver's testimony and documents in real time state that he was terminated for failure to have a license, and he was told this again before he ever applied for any FMLA leave, before he engaged in protected activity. Well, going back to the line of questioning that Judge Murphy started, if we're talking about whether the position was not eliminated under the prima facie case, let's assume the record is silent. That doesn't work to your benefit, does it? I mean, under the case law, that cuts against you. If the court chooses to use that test, then we'll move on to the second and third prongs of it? It's our test. I mean, I assume we're going to follow it, right? Well, it wasn't applied. It hasn't certainly been applied in every case in which there's— No, but they chose to use it here to derive an inference of discrimination, right? Appellants are seeking that test, and again, I don't believe there's any factual support for it, and I think it differs from the purpose of the prima facie case. I guess I wasn't clear in what I was getting at. Let's assume for the moment that you can use the test. Then the factual issue of whether the position was eliminated or not, let's assume that what I had construed to be a concession in the brief is not that. Then the record is silent as to whether the position was eliminated or not. As a matter of law, that cuts against you, right? I'm not sure that's true because the burden's on the plaintiff to meet a prima facie case, and they can't rely on— They've asserted the position was not eliminated. And that's certainly based on a statement about generally the Kansas City office, not his position, frequently hiring. That doesn't answer the question of what happened to his position. Is his position unique? They're all sales representatives working the phones. And I'm not sure that's relevant to the analysis, Your Honor. Well, it is relevant to the analysis if your argument is that the position was eliminated. And that's not the argument, Your Honor. The argument is that the right test to use in a situation where we're not talking about position elimination, this is not a situation like in WalkingStick where the notes said reduction in force is one of the reasons why we're going to terminate. If Geico had said that and then changed course, you know, that would be a different story. Here we're talking about somebody's race, which has not changed since day one, and whether there's any kind of inference of racial discrimination in the record. There's no comments made. But you don't—what we're trying to say is that to set up a prima facie case, we don't require that they show an inference of racial discrimination. All they have to show is that they're a member of a protected class, they've been terminated, and the position has not been eliminated. Then you move to the second step. And I'm happy to move to the second and third steps of the analysis here because Geico has articulated again that legitimate nondiscriminatory reason. And this Court's role is certainly not to sit as a super personnel department weighing in on the business judgment of the employer. To go back to the stipulations in this case, the requirement to have a New York license applied to everybody, and no other sales agent in the department lacked a New York license. There's testimony from Ms. Beaver about that. It was stipulated that New York was the second highest call volume state. It was stipulated Mr. Plump was told he couldn't remain in his role in November, and that was reiterated. The exact same reason was told to him in February 2021 when he was told he was being terminated for denial of his New York license. I'll direct the Court to the record on Appeal 288, which is an email from his manager, who it's not disputed was the one with authority to terminate him, expressly referencing his failure to obtain a New York license and referencing prior communications with him. The District Court cited a case that I think is applicable, the Thomas v. Avis-Frentikar case. And in that case, the employee admitted that he violated company policy. It was a lost-and-found policy, turning in lost materials immediately. And the Court found that because he admitted that he had done so, there was no dispute that the reason for the termination was true, and his speculation of discrimination was not enough to carry his burden on pretext. Here, the plaintiff admits that he was denied a license to sell insurance that was required for his job. GEICO required it, and that is stipulated. He has not met his burden to show that discharging him for this reason was a cover for race discrimination or, again, for filing for leave after he was told that he couldn't stay in his role for this reason. This is distinguishable from any temporal proximity cases because, again, he was told the reason before he ever applied for FMLA. Okay, what do you deem to be the adverse action here? The communication to Mr. Plump that he was ineligible to stay in his role? The district court did not make that the adverse action. It made it the termination. And I don't see where you have contested that decision. And the termination itself is the adverse, is the ultimate adverse action. Well, that's not what you initially said. The adverse action, that affects the timing of this, right, of any claimed retaliation of when the adverse action was. And this is not in the briefing, but I guess in the statute of limitations context, Your Honor, courts look at when the termination decision was communicated. I don't think that gets at my point. My point is the district court had a certain timeline in determining when there would have been a causation effect for retaliation. That timeline set the adverse action as being when he was terminated, not when they considered terminating him, when they terminated him. And as far as I know, there was no challenge to that in the briefing. I'm out of time. May I continue? Oh, please do. That's correct that the adverse action took place in February. I'm not sure how it can be pretext to tell somebody the reason for termination before the person has engaged in any protected activity. That would be irrelevant. Well, the termination occurred after the protected activity. For the reason, that's correct. It's for the same reason he was told before. Well, if the point is, is adverse action taken against you because of protected activity, it is a distinction with a difference whether the adverse action is the contemplation of termination or the actual termination, right? I agree that those are two separate things. They are two separate things, and the court chose the latter, the termination. And therefore, that has an impact on the timing of when you can view the action for the protected activity to have taken place, the adverse action as it relates to the protected activity. And that might get us beyond the prima facie case, but it certainly doesn't meet plaintiff's high burden to show, again, by a preponderance of the evidence that this was pretext because he was told this reason before he ever applied for FMLA. Let me understand one thing about pretext. There are retaliation claims, and there's a racial discrimination claim. As I understood from the briefing, the issue was that the pretext arguments, the rubric for pretext, would be the same for all three claims. I understood the parties to do that on the other side, and you did do that as well. Yeah, that's correct. So the implication of that is, is it not, that if you win, let's assume, if you win on the pretext arguments for retaliation, you should also win as to the racial discrimination claim on pretext. Is that your understanding? That's correct, Your Honor. Okay. The red light's on. Thank you. Thank you for your time. Thank you. I think you are out. I'm talking to the appellant. I think you're out of time. I want to ask you a question, so you will have 30 seconds. And that 30 seconds goes to exactly the question I asked the opposing counsel. Is it your understanding that if you were to lose, just assuming, you were to lose on the pretext claims regarding retaliation, you also lose on pretext as it relates to racial discrimination, right? That's not our understanding. Your arguments were joined on pretext as it relates to all three claims, was it not? Yes, but the race discrimination pretext evidence begins before the FMLA retaliation evidence. Okay. All right. Thank you for your position. Thank you, Your Honor. Cases are submitted, and the court is in recess until 9 a.m. tomorrow. Thank you, counsel, for your fine arguments. Thank you.